**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sharon Lee, et al., | No. CV-25-00514-PHX-KML |
| Plaintiffs, | **ORDER** |
| v. | |
| Twin Hawks Airpark LLC, et al., | |
| Defendants. | |

Plaintiffs Sharon Lee and Tommy Wessel are property owners and members of a community administered by Twin Hawks Airpark, LLC ("Twin Hawks"). In 2022, Lee filed a complaint against Twin Hawks with the Arizona Attorney General alleging housing discrimination. In 2023, Twin Hawks sued plaintiffs in state court, allegedly in retaliation for Lee's previous complaint of housing discrimination. That suit prompted plaintiffs to file the present suit, alleging three counts of retaliation under 42 U.S.C. §§ 1981, 1982, and 3617. Because the complaint does not state any claim for relief, it is dismissed with leave to amend.

**I.    Factual Background**

Twin Hawks administers a property owners' community in Pinal County, Arizona. (Doc. 22 at 3.) All community property owners, including plaintiffs, are also members of Twin Hawks. (Doc. 22 at 3.) Among Twin Hawks's duties are managing an airstrip for property owners' use, collecting dues from property owners, and enforcing the community's Covenants, Conditions, and Restrictions ("CC&Rs"). (Doc. 22 at 3.) Twin

Hawks's daily work is conducted by a three-person Managing Committee which is elected annually by the property owners. (Doc. 22 at 4.) During all relevant times, defendant Harold Duane Lambeth was on the Managing Committee and was "entrusted with the primary day-to-day responsibilities" like communicating with owners and contracting with outside service providers. (Doc. 22 at 5.)

Plaintiffs allege Lee was the only southeast Asian and Malaysian Twin Hawks member from 2020 until today and although there are other non-white property owners, Lee is the community's only non-white full-time resident. (Doc. 22 at 5.) Between 2020 and 2022, a dispute arose between plaintiffs and "a large number of the other member/owners of the community." (Doc. 22 at 6.) This dispute appears to involve easements which defendants contend run through plaintiffs' land. (Doc. 22 at 8, 10.) Plaintiffs disagree and have evidently obstructed the land in question. (Doc. 24 at 4.)

On June 13, 2022, Lee filed a complaint of housing discrimination against Twin Hawks with the Arizona Attorney General's Civil Rights Division, which she prepared with Wessel's help. (Doc. 22 at 6-7.) That complaint alleged Twin Hawks discriminated against her due to race and national origin. The Managing Committee became aware of the complaint around July 3, 2022. (Doc. 22 at 7.) Plaintiffs allege "Lambeth began speaking with other member/owners about the need to sue" plaintiffs in mid-2022 to enforce what he believed was the community's prescriptive easement permitting others to pass through plaintiffs' property. (Doc. 22 at 8.) Twin Hawks had committed financial resources to such litigation by December 2022, around which time Lambeth also sought approval from enough member/owners to authorize a suit against plaintiffs. (Doc. 22 at 8-9.) Lambeth did not convene a meeting to obtain such approval or even note which members approved; instead, he "unilaterally determined" he had a "quorum and majority approval." (Doc. 22 at 9.) On February 13, 2023, Twin Hawks sued plaintiffs in state court to enforce four prescriptive easements on plaintiffs' property. (Doc. 22 at 9-10.) In June 2023, the Arizona Attorney General dismissed Lee's complaint of discrimination, concluding there was not sufficient evidence to establish a violation. (Doc. 22 at 10-11.)

Plaintiffs allege Twin Hawks's easement suit was filed in retaliation for Lee's discrimination complaint. (Doc. 22 at 10.) Plaintiffs do not explain the factual basis for Lee's June 2022 discrimination complaint, nor do they separately allege a discriminatory motive on the part of either defendant. The only facts supporting retaliation arise from Lambeth's December 2023 deposition in the state-court easement litigation. During that deposition, while acting as Twin Hawks's designated representative, Lambeth stated:

> [Lee] barricaded the road. She filed a harassment lawsuit,[1] which they lost, and had to pay all of our attorney's fees for. Then they filed a discrimination lawsuit, which got thrown out by the State. So that's why we're here.

(Doc. 22 at 10). Plaintiffs also allege that in response to an attorney stating, "we need to not discuss prior actions," Lambeth responded, "the prior action is why we're here." (Doc. 22 at 10.)

In summary, plaintiffs believe Twin Hawks filed the easement litigation because of the discrimination complaint Lee submitted to the Arizona Attorney General. In other words, plaintiffs are suing Twin Hawks for initiating litigation in which Twin Hawks may prevail.[2] Plaintiffs allege three retaliation claims against both defendants. The first is under 42 U.S.C. § 1981, which prohibits private acts of discrimination in connection with making

---

[1] Plaintiffs do not explain this "harassment lawsuit" in the complaint. However, the briefing explains plaintiffs previously filed a "state-law injunction against harassment," which was distinct from "the type of sex-based or race-based harassment common in federal discrimination lawsuits." (Docs. 26, 27.) Defendants explain plaintiffs first filed this petition for an injunction against harassment, which they lost; next, filed the discrimination complaint that was dismissed the following year; and finally filed the present action. (Doc. 25 at 3-4.)

[2] Plaintiffs' focus on defendants' lawsuit may implicate the *Noerr-Pennington* doctrine, which provides immunity from statutory liability for litigants who seek governmental redress, for instance by filing a lawsuit. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (citing *E.R.R. Presidents Corp. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 129 (1961) and *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965)). It appears defendants may have immunity because plaintiffs' statutory claims are based entirely on defendants' lawsuit, which is protected First Amendment activity under this doctrine. *See id*. But the *Noerr-Pennington* doctrine is an affirmative defense, *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 711 F.3d 1136, 1141 (9th Cir. 2013), which is waived when not addressed in the pleadings (as is the case here). *Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005).

and enforcing contracts; the second is under § 1982, which prohibits private acts of discrimination in connection with holding personal property; and the third is under § 3617, part of the federal Fair Housing Act ("FHA") which prohibits retaliation in response to the exercise of a FHA right. (Doc. 22 at 11-16.) Twin Hawks and Lambeth filed separate motions to dismiss all claims.

## II.     Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

## III.    Motions to Dismiss

### A. Wessel's Retaliation Claims

All three statutes allow claims where the plaintiff suffers retaliation because he aided or assisted a different person in the exercise of the statute's rights. *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 452 (2008) (§ 1981 permits claims where plaintiff "suffers retaliation because he has tried to help a different individual"); *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 237 (1969), *abrogated on other grounds by Ziglar v. Abbasi*, 582 U.S. 120 (2017) (plaintiff has standing under § 1982 "for trying to vindicate the rights of minorities"); *Edwards v. Marin Park, Inc*., 356 F.3d 1058, 1062-63 (9th Cir. 2004) (§ 3617 prohibits interference with person aiding or encouraging another person in the exercise of FHA rights). But these claims usually involve a direct harm to that plaintiff, like expulsion from a corporation, *Sullivan*, 396 U.S. at 234, receiving harassing pre-

eviction notices, *Edwards*, 356 F.3d at 1060, or employment termination, *CBOCS W., Inc.*, 553 U.S. at 445. Here, the complaint alleges defendants targeted Wessel due to his assistance with Lee's complaint. But it does not include facts showing defendants even knew Wessel had assisted Lee. Though plaintiffs argue Wessel "advocated" for Lee (Doc. 26 at 12), and that advocacy may have been public, to show defendants were motivated by Wessel's assistance with the complaint, plaintiffs must allege defendants were aware of that advocacy—or, at the very least, that defendants intended to harm Lee by acting against Wessel. *See Armstrong v. WB Studio Enters., Inc.*, No. 24-5049, 2025 WL 3002614, at *1 (9th Cir. Oct. 27, 2025) (relevant decision-maker must be aware of protected activity); *see also Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 173 (2011) (reprisals against uninvolved significant others can constitute retaliation). They do not. Accordingly, all claims on Wessel's behalf are dismissed with leave to amend.

### B.  42 U.S.C. §§ 1981 and 1982 claims

Plaintiffs asserting § 1981 claims "must initially identify an impaired contractual relationship [] under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (simplified). Similarly, § 1982 claims require plaintiffs to show their right to hold property was impaired. 42 U.S.C. § 1982; *see CBOCS W., Inc.*, 553 U.S. at 447 (§§ 1981 and 1982 construed similarly). "The plaintiff must also plausibly allege that the defendant impaired that relationship [or right] on account of intentional discrimination" or intentional retaliation. *Astre v. McQuaid*, 804 F. App'x 665, 666 (9th Cir. 2020); *see also Kwesele v. King Cnty.*, 804 F. App'x 726, 727 (9th Cir. 2020) (plaintiff must show defendants "acted with intent to discriminate or retaliate against him" (quotations omitted)). Allegations of intentional retaliation may be supported by direct evidence or specific and substantial circumstantial evidence. *Kwesele*, 804 F. App'x at 727-28.

Plaintiffs have not alleged sufficient facts to plausibly establish intentional retaliation. Showing intentional retaliation under §§ 1981 and 1982 requires a plaintiff to "initially plead and ultimately prove that, but for race, it would not have suffered the loss

of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020). Racial animus or retaliation need not be "the sole reason" for an adverse action and a defendant may have "mixed motives—i.e., legitimate and illegitimate reasons for an alleged act." *Sharifi Takieh v. Banner Health*, 515 F. Supp. 3d 1026, 1045-46 (D. Ariz. 2021), *aff'd sub nom. Takieh v. Banner Health*, No. 21-15326, 2022 WL 474170 (9th Cir. Feb. 16, 2022). Still, "a complaint must contain sufficient factual matter to show that racial prejudice [or retaliation] was a necessary condition" of the harm, which would not have occurred without the discrimination. *Id*. at 1045. A complaint may be dismissed if a "plausible alternative explanation is so convincing that [the] plaintiff's explanation is *im*plausible." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Plaintiffs allege only two facts supporting retaliation: (1) defendants learned of plaintiffs' discrimination complaint in mid-2022, around when Lambeth began mobilizing members for a lawsuit eventually filed in December 2022 (Doc. 22 at 8); and (2) Lambeth stated in a deposition "we are here" because of plaintiffs' prior action and obstruction of the relevant property (Doc. 22 at 10). Temporal proximity on its own is not typically enough to state a plausible claim of retaliation. "Even cases involving very close temporal proximity have generally featured independent evidence of discrimination or retaliation," *Kama v. Mayorkas*, 107 F.4th 1054, 1060-61 (9th Cir. 2024) (collecting cases), and courts do not find events three or four months apart to be sufficiently proximate. *Garcia v. City of Everett*, 728 F. App'x 624, 628 (9th Cir. 2018). Here, the lawsuit was launched over six months after defendants allegedly learned of plaintiffs' complaint and continued after that complaint was dismissed. (Doc. 22 at 8.) And the temporal proximity is joined only with vague, out-of-context quotes from a deposition; even plaintiffs acknowledge Lambeth's statements may refer to plaintiffs' discrimination complaint or to separate legal proceedings. (Doc. 26 at 16.) Plaintiffs do not allege any discriminatory or racial statements or views were shared between Lambeth and the Twin Hawks members, nor do they allege any circumstantial evidence similarly-situated white members were or would have been treated differently than plaintiffs.

This is not enough to plausibly allege Twin Hawks's lawsuit would not have occurred without intentional race-based retaliation, particularly in the face of a convincing alternative nonretaliatory explanation plaintiffs themselves offer. *Starr*, 652 F.3d at 1216. Plaintiffs allege a dispute arose between them and "a large number of other member/owners" which was unrelated to race or discrimination: the broader Twin Hawks community contested the existence of easements on plaintiffs' land. (Doc. 22 at 6, 10; *see* Doc. 24 at 4.) After years of escalating disagreements, Twin Hawks's Managing Committee reached a quorum of members to take legal action against plaintiffs and began litigation to enforce the easements. (Doc. 22 at 8.) This nonretaliatory reason for the lawsuit is supported by deposition testimony (Doc. 22 at 10 ("[s]he barricaded the road")), by the fact that the suit continued after plaintiffs' complaint of discrimination was dismissed (Doc. 22 at 10-11), and by the allegations that a "large number" of member/owners believed there were easements on plaintiffs' property (Doc. 22 at 6, 10). Courts have dismissed claims based on these types of alternative explanations even where plaintiffs pleaded discrimination in far more detail than here. *Sharifi Takieh*, 515 F. Supp. 3d at 1048 (nondiscriminatory alternative explanation convincing compared to allegations of discriminatory remarks and hospital policy); *Astre*, 804 F. App'x at 667 (§ 1981 claims "implausible" where plaintiff alleged termination due to sufficiently-pleaded discrimination but also suggested termination due to loss of community support).

The complaint itself convincingly alleges Twin Hawks's lawsuit would have occurred regardless of plaintiffs' protected activity. The §§ 1981 and 1982 causes of action are therefore dismissed with leave to amend.

### C. Fair Housing Act claims

The FHA protects against discrimination in housing and prohibits retaliation against an individual who has "exercised or enjoyed . . . any right granted or protected" by the statute. 42 U.S.C. § 3617; *see also Edwards*, 356 F.3d at 1062-63 (9th Cir. 2004). Section 3617 plaintiffs must show a defendant's actions affected their exercise of an FHA right. *Morris v. W. Hayden Ests. First Addition Homeowners Ass'n, Inc.*, 104 F.4th 1128, 1143

(9th Cir. 2024), *cert. denied*, 145 S. Ct. 1127 (2025). Claims for retaliation and interference under the FHA require plaintiffs allege "(1) [they were] engaged in protected activity; (2) [they] suffered an adverse action; and (3) there was a causal link between the two." *Ohio House, LLC v. City of Costa Mesa*, 135 F.4th 645, 670 (9th Cir. 2025) (simplified); *see City of Oakland v. Wells Fargo & Co.*, 14 F.4th 1030, 1035, 1042 (9th Cir. 2021) (FHA claims must meet proximate cause standard which requires "some direct relation" between harm and conduct).

The first element is satisfied by plaintiffs' allegation Lee submitted a complaint of discrimination to the Arizona Attorney General. (Doc. 22 at 7.) But the adverse action is not clearly alleged because plaintiffs have not pleaded facts suggesting their right to be free from racial discrimination was affected at all, or that any interference took place beyond a lawsuit contemplated by the CC&Rs (Doc. 26 at 8 (conceding the CC&Rs allow "a homeowners' association to enforce a perceived violation against one of its members")). *Cf. Morris*, 104 F.4th at 1142 (enforcing § 3617 due to disparate treatment which did not follow CC&R procedures and affected plaintiffs' use of property). And plaintiffs do not even meet the lower causation standard for FHA claims for the same reasons they do not meet the "but-for" causation standard for §§ 1981 and 1982 claims.

This claim is dismissed with leave to amend.

**D. Motion for Sanctions**

Twin Hawks also filed a motion for sanctions arguing the first amended complaint lacked a factual and legal basis. Fed. R. Civ. P. 11(b) requires attorneys to conduct a reasonable inquiry into prospective lawsuits and determine legally-tenable claims exist before filing. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). "In analyzing whether a complaint is sanctionable under Rule 11, [the court] employ[s] an objective standard of reasonableness and [does] not consider the attorney's subjective good faith." *Lake v. Gates*, 130 F.4th 1064, 1068 (9th Cir. 2025).

Twin Hawks contends the first amended complaint is sanctionable because it is frivolous and no competent attorney, having made a reasonable inquiry into the facts, could

have reasonably believed retaliation took place. (Doc. 30 at 2-4, 11.) Plaintiffs' counsel contests this, arguing he "conducted an adequate pre-filing inquiry." (Doc. 32 at 1.) Examining the record, a competent attorney could have believed it permissible to excerpt facts most relevant to the claims alleged here and interpreted some deposition testimony as hinting that protected activity played a role in the state lawsuit against plaintiffs. After all, as Twin Hawks concedes, "[i]t is completely unclear from [Lambeth's quotes] what Mr. Lambeth was referring to with the statements 'why we're here.'" (Doc. 30 at 5.) Accordingly, Twin Hawks have not sufficiently shown Mr. Gattone failed to make a reasonable inquiry into the facts.

As is true in the cases cited by Twin Hawks (Doc. 30 at 3), factual errors and shoddy inquiries which result in sanctions are typically egregious and undermine the litigant's entire case. *See Greenberg v. Sala*, 822 F.2d 882, 887 (9th Cir. 1987) (collecting cases where litigant error or prior admission contradicted dispositive facts); *see also Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1367 (9th Cir. 1990) (motion frivolous where "competent reading of our rules and precedent would very quickly have made" procedural issues clear). Ultimately, "a complaint based on reasonable inquiry should not be found to be factually frivolous unless some clear authority or a litigant's own clear admission erases the factual underpinning from some essential element of the litigant's pleading." *Greenberg*, 822 F.2d at 887. Twin Hawks has not met that standard here. Accordingly, the motion is denied. Attorneys' fees to the prevailing party are also denied.

### E. Conclusion

Plaintiffs did not allege facts supporting a plausible claim of retaliation and all three of their claims are dismissed with leave to amend. The complaint does not rise to the level of frivolity required for sanctions and the motion for sanctions is denied. If plaintiffs choose to amend, they should clearly state which actions may be imputed to Lambeth or Twin Hawks LLC and why Lambeth may be liable as an individual defendant.

/

/

Accordingly,

**IT IS ORDERED** defendants' motions to dismiss (Docs. 24, 25) are **GRANTED WITH LEAVE TO AMEND**. No later than **February 11, 2026**, plaintiffs shall file an amended complaint. The Clerk of Court is directed to enter a judgment of dismissal with prejudice if no amended complaint is filed by that date.

**IT IS FURTHER ORDERED** defendants' motion for sanctions (Doc. 30) is **DENIED**.

Dated this 26th day of January, 2026.

Honorable Krissa M. Lanham
United States District Judge